UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RITA PURDY, | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )    No. 1:15-cv-330-JDL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant | ) |

**REPORT AND RECOMMENDED DECISION**[1]

In this Supplemental Security Income ("SSI") appeal, the plaintiff contends that the administrative law judge wrongly evaluated medical evidence and medical opinions, failed to discuss the weight given to state-agency reviewers' reports and wrongly evaluated those reports, and that the testimony of the vocational expert was invalid. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from status post knee replacement, degenerative disc disease, right shoulder rotator cuff bone spurs, chronic pain, dysthymia, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and history of

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 16, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

substance abuse in remission, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 2-3, Record at 14-15; that she had the residual functional capacity ("RFC") to perform sedentary work, except that she should never climb ladders, ropes, or scaffolds, could rarely balance, crouch, crawl, kneel, or climb ramps or stairs, could not use foot controls, must avoid exposure to hazards such as unprotected heights, and could perform unskilled jobs with simple instructions and occasional interaction with others, Finding 4, *id*. at 16-17; that she had no past relevant work, Finding 5, id. at 21; that, considering her age (36 years old on the date her application was filed, October 10, 2011, education (at least high school), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*.; and that she, therefore, had not been disabled from October 10, 2011, through the date of the decision, February 27, 2014, Finding 10, *id*. at 22. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I.  Discussion

### A.  Step 2 Issues

The plaintiff contends that the administrative law judge should have found that her "femur/hip" impairment was severe. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 13) at 5. She relies on a report of Michael Kessler, M.D., an orthopedist, that states that the "femur/hip" fracture "resulted in substantial physical limitations due to post-

surgical malunion of the fracture."[2] *Id.* She adds that the administrative law judge "improperly assessed the duration" of this impairment. *Id*. at 5-7.

The administrative law judge said the following about the fracture in her discussion at Step 2:

> Although the claimant has been diagnosed with a left hip stress fracture, as of April 2013 (18F, 20F), this impairment is not "severe" as there is no evidence in the record that it has persisted or is expected to persist for 12 consecutive months as required by 20 CFR §§ 404.1509 and 416.909. A radiology report, dated 09/24/2013, revealed normal findings of the claimant's femur, indicating her fracture was healing (17F/10).

Record at 14-15. The plaintiff characterizes this as an impermissible "lay opinion" by the administrative law judge. Itemized Statement at 5.

The defendant responds that the plaintiff immediately began to improve with treatment beginning after the stress fracture was diagnosed in April 2013. Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 3. Dr. Kessler expected the stress fracture to heal well and recommended conservative treatment. Record at 904-05. In June 2013, he reported a good range of motion in the plaintiff's affected hip, *id.* at 900, and in September 2013, imaging showed that the fracture was healing. *Id*. at 894. In November 2013, Dr. Kessler observed that the plaintiff was not using a walker or a cane, she was walking with "minimal to no limp," and he stopped prescribing pain medication for the hip. *Id*. at 890-91. *See, e.g., Rosario v. Colvin*, Civil No. 14-1633(CVR), 2015 WL 2062030, at *4 n.4 (D.P.R. May 4, 2015) (administrative law judge not interpreting raw medical data when looking at record to see what medications and dosages were being administered and whether they changed).

---

[2] Actually, Dr. Kessler wrote that a "fracture of left femur [with] delayed union" was the cause of the physical limitations that he checked on the form entitled Medical Source Statement of Ability to Do Work-Related Activities (Physical), upon which the plaintiff relies. Itemized Statement at 4, Record at 926-27. In addition, there is no evidence of any surgery connected with the fracture.

Contrary to the plaintiff's assertion, this is medical evidence about which a lay person may make a common sense judgment as to resulting work-related impairments. *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990); *see, e.g., Jolicoeur v. Social Sec. Admin. Comm'r*, No. 1:09-cv-389-JAW, 2010 WL 3274715, at *6 (D. Me. Aug. 5, 2010).

The plaintiff also complains, Itemized Statement at 6, that she was required to submit all medical evidence at least five days before her hearing on February 11, 2014, less than two months after Dr. Kessler filled out the form, making it impossible for her to establish that her stress fracture, which was first diagnosed in July 2013 and may have occurred in February 2013,[3] Record at 898, would continue to cause work-related limitations beyond 12 consecutive months. However, the plaintiff was represented by an attorney at the hearing, *id*. at 12, and nothing prevented the attorney from seeking to submit further medical evidence after the hearing. Nothing on the form filled out by Dr. Kessler asks him to opine concerning the duration of the limitations he chose for the plaintiff. Contrary to the plaintiff's contention, Itemized Statement at 6, it is not reasonable to assume that the allegedly disabling effects of a stress fracture that is being treated conservatively and showing signs of healing within a few months after diagnosis will continue indefinitely. In addition, as the defendant notes, Opposition at 4, the plaintiff submitted no evidence of treatment for the stress fracture during the three months before the hearing.

The plaintiff also contends that the administrative law judge "failed to give good reasons for rejecting Dr. Kessler['s opinions.]" Itemized Statement at 7. Specifically, she relies on Dr. Kessler's opinion that the plaintiff could never engage in stooping, "because the Commissioner's own rulings provides that some stooping 'is required to do almost any kind of work.' SSR 85-15."

---

[3] In this regard, it is interesting to note that, immediately above his signature on the form, Dr. Kessler states that it is his professional opinion that the limitations that he ascribes to the stress fracture have existed "from 10/10/11 to the present." Record at 929.

5

*Id.* (emphasis omitted). However, none of the three jobs identified by the administrative law judge as available to the plaintiff, document preparer, surveillance system monitor, and stem mounter, Record at 22, requires stooping. *Dictionary of Occupational Titles* §§ 249.587-018 (document preparer), 379.367-010 (surveillance system monitor), 725.684-018 (stem mounter) (U.S. Dep't of Labor, 4th ed. rev. 1991). Any error in this regard would accordingly be harmless.

The plaintiff argues that the fact that Dr. Kessler gave no examples of objective laboratory findings, symptoms, or other medical evidence to support the conclusions stated on the form upon which the plaintiff relies cannot be a good reason to reject his opinions, Record at 20, because "his notes were in the record" and the administrative law judge "failed to apply this same test to the forms from the DDS reviewers[.]" Itemized Statement at 8. Actually, the administrative law judge also found that Dr. Kessler's treatment notes did not support these opinions. Record at 20. Such inconsistency is a well-recognized "good" reason to reject a medical source's opinions. *E.g., Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3-*4 (D. Me. Jan. 29, 2014). Dr. Kessler's mere mention of a diagnosis does not provide an explanation of the functional limitations that he checked on the form. Nor does the fact that the administrative law judge may not have applied the same test to other medical opinions in the record require that she adopt Dr. Kessler's opinions.[4] The administrative law judge also supportably relied on the plaintiff's own reports of her activities of daily living in rejecting Dr. Kessler's opinions, Record at 20, which the plaintiff does not challenge.

The plaintiff next faults the administrative law judge for "ignor[ing]" the opinion of David Rioux, D.O., that it would be difficult for the plaintiff to carry any weight due to her knee problems. Itemized Statement at 7, 10-11. The administrative law judge, however, did not ignore the report

---

[4] I do not rely in any way upon the administrative law judge's speculation that Dr. Kessler's opinions may be based in part on a desire to help his patient obtain benefits. Record at 20.

of Dr. Rioux, a consulting examiner.  Rather, she recounted Dr. Rioux's findings, stating that "Dr. Rioux indicated that he would not be able to determine the amount of weight the claimant could lift[] due to her subjective knee pain[.]"  Record at 18.  The plaintiff sees this as an "unfair[] characteriz[ation]," Itemized Statement at 10, of the following sentence in Dr. Rioux's report: "As far as her ability to carry any weight, this would be difficult because of her knee pain."  Record at 417.

While I do not agree with the defendant that the plaintiff's interpretation of this sentence "presents a distinction without a difference" from the administrative law judge's interpretation, Opposition at 9, I do agree that the sentence cannot be translated into a specific limitation, much less a prohibition on lifting altogether.  *See generally Sheldon v. Colvin*, Civil No. 2:13-CV-315-DBH, 2014 WL 3533376, at *5 (D. Me.  July 15, 2014).  Accordingly, this portion of the administrative law judge's opinion does not entitle the plaintiff to remand.

The plaintiff's final attack under the heading of Step 2 targets the opinions of the state-agency physician reviewers.  Itemized Statement at 11-15.  She asserts that the administrative law judge violated Social Security Ruling 96-9p "by failing to state the weight given the DDS opinions[,]" and that she should not have considered those opinions at all because "they were based on an incomplete record."  *Id*. at 11, 13.  Neither argument prevails.

The administrative law judge did assign weight to the opinions of the state-agency reviewers, J. H. Hall, M.D., and Benjamin Weinberg, M.D.  She stated that their opinions were

> not inconsistent with the medical evidence as a whole, and [were] accorded evidentiary weight in determining the claimant's residual functional capacity identified above (1A, 3A).  These doctors agreed, after a thorough analysis of the evidence, that the claimant would be able to perform at the sedentary exertional level, with the aforementioned limitations, which take into account her knee problem, her pain, and her mental limitations.

Record at 20-21.

At oral argument, the commissioner's attorney conceded that the administrative law judge's failure to assign specific "evidentiary weight" to the evidence was an error, but argued that the error was harmless because the administrative law judge adopted the RFC assigned to the plaintiff by these state-agency physician reviewers, so that it is apparent that she gave those reports considerable weight.  I agree that the reports provide substantial evidentiary support for the RFC.

The plaintiff's argument here is more accurately described as an assertion that the administrative law judge should not have given these opinions any weight, because "they did not consider the effects of" "the broken femur" and "did not assess her right shoulder problem or chronic pain," unlike the administrative law judge.  Itemized Statement at 12.

First, the plaintiff's "broken femur" was actually a stress fracture, which by definition is a hairline fracture, or "fatigue fracture."  Stedman's Medical Dictionary (27th ed.) at 712.

I have already rejected the plaintiff's challenges to the administrative law judge's rejection of Dr. Kessler's opinions concerning functional limitations, which is the only evidence of the effects of the stress fracture upon which the plaintiff relies.

Second, the plaintiff does not identify any limitations caused by her "right shoulder problem" or her "chronic pain" that are not included in the RFC that was assigned to her by the administrative law judge.  The same is true of the fractured wrist and ribs that she incurred in December 2013, to which she refers in passing in this section of her itemized statement.  Itemized Statement at 12.  Her failure to specify any such limitations and to tie them to specific medical evidence and opinion renders harmless the fact that Dr. Hall and Dr. Weinberg may not have been aware of these alleged impairments.[5]

---

[5] I note also that the state-agency reviewers did review medical records concerning the plaintiff's right shoulder rotator cuff bone spurs.  Record at 57-66, 73-82, 340-41, 350-51, 417.  They did not identify any functional limitations caused by this condition.

In addition, the plaintiff does not contend that the administrative law judge shoulder have found her wrist fracture and rib fractures to be severe impairments. Accordingly, it is irrelevant that the opinions of Dr. Hall and Dr. Weinberg predated the evidence of these events. *Gagnon v. Colvin*, No. 2:13-cv-00213-NT, 2014 WL 3530629, at *5 (D. Me. July 15, 2014).

### B. Step 5 Issues

Next, the plaintiff contends that the mental RFC assigned to her by the administrative law judge was unsupported by substantial evidence. Itemized Statement at 15-18. Specifically, she complains that the administrative law judge found that she had limitations in social functioning and in concentration, persistence, or pace due to an anxiety disorder and ADHD rather than a severe substance abuse disorder and possible learning disorder, as the state-agency psychological reviewers had found. *Id.* at 15. At oral argument, the plaintiff's attorney clarified this allegation of error, asserting that the mental limitations included in the RFC assigned to the plaintiff were only supported by the opinions of the state-agency reviewers and, because the administrative law judge did not adopt their findings identifying severe impairments, she could not adopt those limitations when she found different mental impairments to be severe.

The plaintiff's attorney did not cite any authority in support of this argument, and I was unable to find any authority on point. The simple response, however, is that, if the RFC included the limitations found by the state-agency psychologists to exist, whatever their cause, the plaintiff has not been harmed. *See generally Foley v. Astrue*, Civil Action No. 06-72 Erie, 2008 WL 2996519, at *1-*3 (W.D. Pa. July 31, 2008).

The administrative law judge did rely on the opinions of Robert Maierhofer, Ph.D., and Brian Stahl, Ph.D., the state-agency reviewing psychologists, in reaching her mental RFC. Record at 20-21. She found that their opinions were "not inconsistent with the medical evidence as a whole" and gave them "evidentiary weight." *Id.* at 20. The plaintiff contends that the

9

administrative law judge wrongly found that the plaintiff suffered only from the same moderate limitations in social functioning and concentration, persistence, or pace that the state-agency reviewers found to result from a single severe impairment of substance abuse, while also finding severe impairments of ADHD, anxiety, and a dysthymic disorder.[6] Itemized Statement at 16. She cites no authority in support of this argument.

The plaintiff does not identify any functional limitations that should have been added to her RFC arising from the additional severe impairments included in the administrative law judge's opinion. She would also have to demonstrate that these functional limitations would change the outcome of her claim. These omissions mean that she cannot demonstrate that the outcome of her claim would have been different if the administrative law judge had acted in the manner that she apparently deems appropriate. The plaintiff takes nothing by this argument, on the showing made. *See Knudsen v. Colvin*, No. 2:14-cv-155-JHR, 2015 WL 1505689, at *7 (D. Me. Apr. 1, 2015).

The plaintiff argues that the administrative law judge's assignment of "evidentiary weight," otherwise unquantified, to the state-agency reviewers' reports entitles her to remand because the statements does not inform the plaintiff "or this Court how the ALJ could have arrived at the conclusion that she could adopt the DDS limitations when she relied on an entirely different medical basis for the limitations in the first place." Itemized Statement at 17. However, the administrative law judge relied on the state-agency reviewers' reports, along with other evidence, to reach her conclusions, as she stated, so "an entirely different medical basis" was not involved.

*Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527 (D. Me. June 29, 2010), the only authority cited, without pinpoint, by the plaintiff in support of this argument, is distinguishable. In that case, the administrative law judge concluded that the plaintiff had suffered

---

[6] The plaintiff includes chronic pain in this list, Itemized Statement at 16, but that is not a mental impairment.

10

from a severe mental impairment prior to his date last insured and gave weight to the state-agency reviewers' reports only to the extent that they reflected this. *Id*. at *6. That conclusion obliged her to make an RFC determination based on that evidence, but the hypothetical question that she posed to the vocational expert at hearing was not based on that evidence, so remand was required. *Id*. Nothing similar has occurred here. At most, the administrative law judge here found that more than one severe impairment supported the mental limitations that the state-agency reviewers based on a single severe impairment, resulting in a finding that did no harm to the plaintiff.

The plaintiff also contends that the administrative law judge "rejected the very basis upon which [the DDS mental impairment opinions] were premised" because she "miscited Dr. Butler" by saying that there was no evidence of cognitive dysfunction in the record. Itemized Statement at 17-18. First, Dr. Butler's statement that the plaintiff would "likely" have "difficulty" sustaining task focus is not a specific functional limitation. 20 C.F.R. § 416.927(a)(2); *Sheldon*, 2014 WL 3533376, at *5. Accordingly, it cannot serve as the basis for a particular functional limitation in an RFC. *Id*. Second, and more important, Dr. Maierhofer and Dr. Stahl rejected Dr. Butler's conclusions, and the administrative law judge's RFC is based on their reports.

### C. Vocational Testimony

Finally, the plaintiff contends that the vocational testimony supporting the administrative law judge's Step 5 finding was "based on an invalid RFC and thus was invalid also." Itemized Statement at 18. I have rejected the plaintiff's challenges to the RFC, so this summary argument must fail. The plaintiff also argues that the vocational testimony was "invalid," because the vocational expert "admitted" that she relied upon Job Browser Pro software, did not know how the numbers provided by that software were derived, and did not state that she thought that the numbers were valid or the best possible numbers. *Id*. at 19. She cites a case from the District of Massachusetts in support of her argument. *Id*. at 20.

The plaintiff also cites one case from this district that is mentioned in the Massachusetts case, *Dorman v. Astrue*, Civil Action No. 12-40023-TSH, 2013 WL 4238315, at *8 (D. Mass. May 21, 2013), and two from the Central District of California, but she does not discuss the other case from this district that is discussed at length and distinguished in *Dorman* and that is directly applicable to the instant case. In that case, *Poisson v. Astrue*, No. 2:11-cv-245-NT, 2012 WL 1067661 (D. Me. Mar. 28, 2012), decided well after the case that the plaintiff does acknowledge, *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237 (D. Me. July 19, 2010), this court rejected the same challenge brought by the plaintiff here to the vocational expert's reliance on Job Browser Pro. *Poisson*, 2012 WL 1067661, at *9.

In *Poisson*, the vocational expert testified that she did not know how the Job Browser Pro program got from the detailed occupation grouping number at the Bureau of Labor Statistics to the individual number for a given job, but that, in her opinion, the numbers it generated were accurate and had "great integrity." *Id*. She "explained why she thought that the underlying data was reliable and endorsed the numbers derived therefrom as accurate." *Id*. This meant, the court held, that the vocational expert "relied on her professional experience and expertise, and not strictly on a software program, in endorsing the numbers provided to the administrative law judge." *Id*. The court upheld that testimony.

Here, the testimony is sufficiently similar to require the same result. The vocational expert testified, Record at 54, that she got the numbers of the jobs that she identified as being available to the plaintiff in response to the administrative law judge's hypothetical question "from SkillTRAN[,]" the creator of Job Browser Pro. Itemized Statement at 19. She went on as follows, in response to the question "What indicates that the numbers are reliable?" from the plaintiff's attorney:

> And they're, you know, a very reputable company. They do, they rely on, you know, the occupational employment statistics, the Bureau of Labor Statistics. And then they also have people that are in the field looking at these various jobs from time to time. They have some sort of a statistical numeric system that they use to estimate them[.] . . . And they do estimate them based on the actual D[ictionary of] O[ccupational] T[itles] code and not on, you know, like a composite. And, you know, most V[ocational] E[xpert]s rely on this or many VEs rely on it. . . . It seems to be--it is accepted in most of the other areas that I work in, so. . . . And then they take out [other jobs from the group]. They do a statistical and I–I do not know how they do that statistically, but they come up with the estimated number in that particular DOT code.

Record at 54-55.

In *Poisson*, the vocational expert's testimony was similar. 2012 WL 1067661 at *9. Here, it is sufficient to demonstrate that the vocational expert was relying on her professional experience and expertise to conclude that the underlying data was reliable and that she endorsed the numbers to which she testified. Nothing further was required.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of May, 2016.          /s/  John H. Rich III
                                            John H. Rich III
                                            United States Magistrate Judge